## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

FIRST MOUNT VERNON INDUSTRIAL,     *
LOAN      ASSOCIATION, *et al.,*      *
     *
     Plaintiffs,      *
     *
     v.      *     Civil Action No. 8-08-cv-02085-AW
     *
KEITH J. SMITH, *et al.,*      *
     *
     Defendants.      *
     *

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MEMORANDUM OPINION</u>

Plaintiffs First Mount Vernon Industrial Loan Association ("FMV") and Ticor Title Insurance Company ("Ticor") (collectively "Plaintiffs") brought this action alleging fraud and conspiracy against Keith J. Smith ("Smith"), Latonya Abrom ("Abrom"), and negligence against Christian Title & Escrow ("Christian Title") (collectively "Defendants"). Christian Title has cross-claimed for indemnification and contribution against Smith. Currently pending is a motion by Smith and Abrom to dismiss the claims against them for failure to state a claim and a motion by Smith to dismiss Christian Title's Cross-Claim for failure to state a claim. The Court has reviewed the parties' filings with regard to the instant motion. The issues have been fully briefed, and no hearing is deemed necessary.[1] *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will deny Smith and Abrom's motion to dismiss and  will grant Smith's motion to dismiss the Cross-Claim without prejudice.

---

[1]  As the Court has determined that no hearing is necessary, the Court denies the Defendants' Request for a Hearing.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts alleged in the Complaint are viewed in the light most favorable to the

Plaintiffs. Plaintiffs allege that First Mount Vernon Industrial Loan Association ("FMV") issued

two mortgages, to Joy Y. Kelly, ("Kelly") one for a property on Geogia Avenue in Washington,

DC and the other for a property on 9th Street in Washington, DC. Plaintiffs allege that Kelly

fraudulently concealed the existence of other mortgages on those properties that took priority

over First Mount Vernon's liens. It is also alleged that Smith, an attorney who represented Kelly

in the transactions, and Abrom, a notary working for Smith who was also Smith's wife,

participated in this fraudulent concealment, and Christian Title, the settlement agent for the

transaction, negligently failed to uncover one out of the four undisclosed deeds of trust. For the

sake of clarity, the Court will discuss the alleged facts as they relate to the transaction in general

and to each Defendant.

**A. General Allegations**

Plaintiffs make four separate claims predicated on fraud. The first two, captioned "fraud"

and "constructive fraud," are substantially predicated on active concealment and failure to disclose

by Smith. Counts 3 and 4, captioned "aiding and abetting fraud" and "conspiracy," also incorporate

an alleged affirmative misstatement in the loan application by Kelly that there were "no mortgages"

on the subject property that had not been disclosed.

On November 17, 2006, Kelly took out a $557,500 loan from FMV, secured by a deed of

trust encumbering a property on Georgia Avenue in Washington, DC, and a property on 9th Street

in Washington, DC. (Compl. ¶¶ 8-10.) Christian Title was the closing agent for the loan and

conducted a title search on September 14, 2006, which revealed a prior lender, First Washington

Insurance Company ("FWIC"), which held a deed of trust on the Georgia Avenue property. (Compl.

¶ 12.) Two months later, on November 16, 2006, Smith provided Christian Title with a release for the Georgia Avenue property, and also provided a payoff statement for an unrecorded deed of trust on the 9th Street property in favor of FWIC for approximately $250,000. (Compl. ¶¶ 14, 25.) Plaintiffs allege that Christian Title did not verify this information with FWIC, and did not discover any other liens on either property. (Compl. ¶ 14.) A further title search on November 7, 2006, showed no other liens on either property, and Kelly in her loan application dated November 13, 2006, stated that there were no mortgages on either property. (Compl. ¶ 15.) FMV claims that it was unaware of any additional liens at that time. Plaintiffs claim that they relied on representations made by Kelly, Smith, and Christian Title, and believed that its loans were the only mortgages on both properties. *Id.*

Later, FMV discovered that the properties were actually encumbered by four deeds of trust that had been recorded within two months before the closing of the FMV loan, one of which had been recorded three days before the closing of the FMV loan and another that had been recorded the day before the closing of the FMV loan. (Compl. ¶ 16.) The loans did not show up in the title search because of a backlog at the Recorder of Deeds. *Id.* The undisclosed deeds of trust eventually found on Kelly's properties were as follows: FWIC deed of trust on the Georgia Avenue property in the amount of $200,000, FC Partners deed of trust on the 9th Street property in the amount of $400,000, FC Partners deed of trust on the Georgia Avenue property in the amount of $230,000, and a Anthony Bolling deed of trust on the Georgia Avenue property in the amount of $130,000. (Compl. ¶ 16.) In advance of securing the First Mount Vernon loan, Kelly had encumbered the Georgia Avenue and 9th Street properties with about $1,210,000 in loans, of which $960,000 made up the total amount of undisclosed liens. (Compl. ¶ 17.)

Based on the statements and representations by Kelly and Smith and Christian Title's title search, FMV claims that they approved the loan and disbursed funds to pay off FWIC's deed of trust on the 9th Street property (the only deed disclosed to FMV's settlement agent) and also paid money directly to Kelly. (Compl. ¶ 28.) FMV also alleges that Kelly has defaulted on her loan obligations since January 9, 2007 and was informed that there were multiple deeds of trust on the Georgia Avenue and 9th Street properties that were ahead of FMV's. (Compl. ¶¶ 29, 32.) FMV won a contract and fraud action against Kelly in the United States District Court for the Eastern District of Virginia for a total of $1,635,675.25 including compensatory and punitive damages. (Compl. ¶ 36.) Ticor is FMV's title insurer, and is subrogated to FMV's rights up to the amount of $680,000 plus attorneys' fees. (Compl. ¶ 37.)

**B. Smith**

Smith was Kelly's attorney before and during this transaction, and his purpose was to assist Kelly with obtaining loans and preventing foreclosure on her properties. (Compl. ¶¶ 4, 11.) One of the undisclosed deeds, to FWIC, encumbered the Georgia Avenue property, but was not recorded until three days before the FMV closing because it was in Smith's possession while Kelly obtained other loans without disclosing it. (Compl. ¶ 19.) Plaintiffs allege Smith and Kelly were aware of this FWIC deed, but did not disclose it to FMV or Christian Title. *Id.* Deeds on each property to an entity called FC Partners were executed while Smith held the FWIC deed and while Smith and Kelly were attempting to obtain the FMV loan. (Compl. ¶ 20.) Plaintiffs allege Smith was aware of the FC Partners deeds and communicated with another attorney for Kelly regarding it. (Compl. ¶ 21.) On November 16, 2006, the day before the FMV closing, Smith sent an urgent fax to a potential lender seeking another loan for Kelly. (Compl. ¶ 24.)

Another of the undisclosed deeds was to a lender, Anthony Bolling. (Compl. ¶ 16.) Plaintiff claims that this deed appears to bear Kelly's signature and to have been notarized in Washington, DC on November 16, 2006. (Compl. ¶ 23.) However, on information and belief, Plaintiffs allege that Kelly was not in Washington, DC, on that date. *Id.* Therefore, Plaintiffs allege that either Smith or someone under his direction signed Kelly's name to the Bolling deed so that it could be recorded before the FMV closing. *Id.* On information and belief, Plaintiffs also allege Kelly and Smith acted with fraudulent intent in the FMV transaction. (Compl. ¶ 45.) Plaintiffs claim that Smith knowingly aided and abetted Kelly's fraudulent statement that there were no mortgages on the properties by, among other things, assisting Kelly in obtaining new loans while keeping the FWIC deeds of trust in his possession, signing Kelly's name to the Bolling deed or directing another to do so, telling FWIC not to send Christian Title information about its deeds of trust on the properties, and sending Christian Title statements regarding the FWIC deeds without disclosing the FC Partners or Bolling deeds. (Compl. ¶ 60.) Plaintiffs allege Smith also agreed and conspired with Kelly to defraud FMV through the previously described actions. (Compl. ¶¶ 70-73.)

**C. Abrom**

Abrom, Smith's wife, was a notary and worked in Smith's office. (Compl. ¶¶ 4, 11.) Plaintiffs allege that Abrom was aware of at least one of the unrecorded deeds prior to and during the FMV transaction. (Compl. ¶ 18.) Because Kelly was not in Washington, DC on November 16, 2006, to sign the Bolling Deed, Plaintiffs allege, on information and belief, that Abrom falsely notarized it so that it could be recorded before the FMV closing. (Compl. ¶ 23.) On information and belief, Plaintiffs also claim that Abrom aided and abetted Kelly's fraud by

falsely notarizing the Bolling deed. (Compl. ¶ 62.) An additional claim is made that Abrom agreed and conspired with Kelly to defraud FMV. (Compl. ¶¶ 70-73.)

### D. Christian Title

Christian Title was the closing agent for the loan and conducted a title search on the Georgia Avenue property on September 14, 2006, the search revealed a deed of trust in favor of FWIC. (Compl. ¶ 12). On November 16, 2006, Smith allegedly provided Christian Title with a release for the Georgia Avenue property, and also provided a payoff statement for an unrecorded deed of trust on the 9th St. property in favor of FWIC for approximately $250,000. (Compl. ¶¶ 14, 25.) Plaintiffs allege that Christian Title failed to confirm the information provided by Smith with FWIC. Had Christian Title done so, Plaintiffs allege that they would have discovered the existence of at least one unrecorded and undisclosed deeds of trust on the properties. (Compl. ¶ 26.) Christian Title did not discover any other liens on either property. (Compl. ¶ 14.) Plaintiffs claim that Christian Title's failures to follow up with FWIC and to otherwise discover the unrecorded liens demonstrated negligence. (Compl. ¶¶ 77-79.)

### E. Procedural History

Plaintiffs filed the Complaint on August 12, 2008. Christian Title filed an answer and a Cross-Claim against Smith on September 29 and 30, 2008, respectively. Smith and Abrom moved to dismiss the claims against them on October 3, 2008, and Smith moved to dismiss the Cross-Claim on October 20, 2008.

## II.        STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and would entitle [him] to relief." *CTI/DC, Inc. v. Selective Ins. Co. of Am.,* 392 F.3d 114, 117 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). When reviewing a complaint under Rule 12(b)(6), a court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff. *Id.* Because the purpose of Rule 12(b)(6) is to test a complaint's legal sufficiency, however, a court need not accept the legal conclusions a plaintiff draws from its factual allegations. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Moreover, when considering a motion to dismiss under "Rule 9(b) of the Federal Rules . . . plaintiffs 'must state with particularity the circumstances constituting fraud or mistake.' " *Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009) (quoting FED. R. CIV. P. 9(b)). In addition, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## III.        ANALYSIS

### A. Abrom and Smith's Motion to Dismiss

Abrom and Smith seek the dismissal of all four claims against them.[2] They argue that the

---

[2]  The negligence claim is stated solely against Christian Title, and it has not moved to dismiss it.

Plaintiff has failed to meet the particularity standard of Rule 9(b). Abrom and Smith assert that District of Columbia law applies to these claims because the property and incidents involved were in DC. Plaintiffs do not contest this. "Maryland follows the traditional rule of *lex loci delicti* in deciding conflict law questions." *Motor Club of America Ins. Co. v. Hanifi*, 145 F.3d 170, 177 (4th Cir. 1998). Since all alleged transactions involving Smith Defendants arose in the District of Columbia, the Court will apply District of Columbia law. *See id.* Under District of Columbia law, the elements of a fraud claim are "(1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). An affirmative misstatement is not necessary: "[n]ondisclosure of material information may constitute fraud especially where there is a duty to disclose." *Pyne v. Jamaica Nutrition Holdings*, 497 A.2d 118, 131 (D.C. 1985).

Smith and Abrom argue that Plaintiffs have not adequately pled a material misstatement or knowledge or intent by Smith and Abrom, and that if they have, they have not done so with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). Plaintiffs respond that they have pled each element of fraud against the Defendants with sufficient particularity to put them on notice of the claims against them, and that the law requires no more. *See Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 800 (D. Md. 1998) (stating that Rule 9(b) must be read in conjunction with Rule 8(a) requirements of notice pleading).

The Court agrees with Plaintiffs regarding the claims against Smith and Abrom. "A court should hesitate to dismiss a complaint under Rule 9(b)" if the complaint puts the defendants on notice of the fraud claims against them and the plaintiffs seem to have "substantial prediscovery

evidence" supporting those claims. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court is satisfied that the claims against Smith and Abrom meet this standard.

The allegations against Smith are similar to those made in *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356, 360 (D.C. 1998). Before buying a condominium, D'Ambrosio asked if there had been any problems with his unit, and the defendants stated that there had been "no problems," but they did not disclose that the complex had problems with leaks and bursting pipes. *Id.* at 357-58. His unit was damaged when a pipe froze and burst in a manner similar to an incident that had occurred a few years before he purchased his unit. *Id.* The trial court dismissed the fraud claim, finding the simple statement that there had been "no problems" "grossly inadequate" to maintain it. *Id.* at 360. However, the Court of Appeals disagreed, finding that the complaint, while pled in an extremely "short and plain" manner, stated all of the elements of fraud with sufficient particularity to satisfy a standard virtually identical to that of the Federal Rules of Civil Procedure. *Id.* at 360-61. Here, Plaintiffs set forth in a "short and plain" statement each element of a fraud claim against Smith. FMV alleges that it disbursed a loan to Kelly, but did so because Kelly withheld information in her loan application regarding the existence of the prior deeds of trust on the properties. They also claim that the failures to disclose Kelly's prior deeds of trust were material, that FMV relied on these failures, and that Kelly and Smith acted with fraudulent intent. It is also alleged that prior to November 14, 2006, Smith kept in his possession the unrecorded FWIC deed of trust on the Georgia Avenue Property while he and Kelly sought to obtain other loans on the 9th Street and Georgia Avenue properties, including the First Mount Vernon loan.

**1. Count 1 for Fraud, Count 2 for Constructive Fraud as to Smith**

The Plaintiff alleges that Smith failed to disclose the existence of unrecorded deeds of trust to FMV or Christian Title in the months and days preceding the FMV loan closing. Christian Title specifically made inquiries regarding FWIC mortgages a few days before the closing, and the Plaintiff's allege that Smith failed to disclose the existence or payment status of one of those liens. In this context, the Court finds that Smith's alleged nondisclosure sufficient for the purposes of Rule 9(b). *See Pyne v. Jamaica Nutrition Holdings*, 497 A.2d 118, 131 (D.C. 1985). Plaintiffs also allege that this misrepresentation was material, in that it would not have entered into the transaction if it had known that its liens, rather than being first in priority, would be behind several others and so greatly reduced in value. They also allege fraudulent knowledge and intent on information and belief. Given the other allegations, such as that Smith held the FWIC deed of trust in his own possession while negotiating with lenders, then arranged for its recordation shortly before the FMV closing, these assertions are sufficient to meet the third and fourth elements of a fraud claim. *See* Fed. R. Civ. P. 9(b) (Stating that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Finally, Plaintiffs allege that FMV relied upon Smith's misrepresentations by entering into a loan transaction in which it was subsequently wiped out by other creditors' foreclosures. Thus, the Court finds that the Plaintiffs have adequately pled a claim for fraud against Smith. The Court will therefore deny the motion to dismiss both the fraud and constructive fraud claims against Smith.

## 2. Count 3 – Aiding and Abetting as to Smith

To maintain a claim for aiding and abetting fraud, Plaintiffs must allege "(1) that an offense was committed by someone; (2) that the accused participated in the commission; and (3) that he did so with guilty knowledge." *Williams v. United States*, 881 A.2d 557, 566 (D.C. 2005). The

Complaint alleges that Kelly falsely stated in her loan application a few days before the closing that there were "no mortgages" on the properties at issue. Plaintiffs claim that the existence of those mortgages was material and that FMV relied on her statements in closing the transaction. Plaintiffs claim that FMV has already sued Kelly for fraud regarding this transaction and won a judgment against her. Thus, the first element of aiding and abetting has been met by proving fraud on the part of Kelly. Plaintiffs then allege that Smith by holding onto his knowledge of the FC Partners deeds of trust and by failing to disclose them, Smith assisted in Kelly's concealment. Plaintiffs allege that Smith also participated in the concealment by sending Christian Title a release of the FWIC lien on the Georgia Avenue property and a payoff statement for another FWIC lien on the 9th Street Avenue property without informing FMV or the settlement agent of the undisclosed loans. In addition, Plaintiffs claim that Smith signed Kelly's name or directed another person to sign Kelly's name to the Bolling deed of trust on the Georgia Avenue property. Plaintiffs have adequately plead their claim for aiding and abetting fraud as to Smith. Accordingly, the Court finds that these facts sufficiently allege Smith's participation and knowledge. Thus, the Court will not dismiss those claims.

### 3. Count 4 – Civil Conspiracy as to Smith

The claims stated in the Complaint regarding Smith's alleged conspiracy to defraud are sufficiently alleged by Plaintiffs to deny Smith's motion to dismiss. Under DC law, "[t]he elements of civil conspiracy are: '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.' " *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C.

2000) (citing *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994)). Plaintiffs claim that Smith conspired with Kelly to retain possession of FWIC deeds of trust on the 9th Street and Georgia Avenue properties, and assist Kelly in seeking and obtaining additional loans on the properties, and thus defraud FMV. Plaintiffs also allege that Smith conspired with Kelly to sign her name to the Bolling deed of trust and submit it for recordation the day before the closing of the FMV loan. Abrom and Smith's only argument against the conspiracy claim is that an underlying fraudulent act has not been stated. Having found that claims of fraud have been adequately pled against Smith, this argument must be rejected. Sufficient actions by Smith have been alleged to support the inference that he was working with Kelly to defraud FMV. Thus, Count 4 remains as well.

### 4. Count 3 – Aiding and Abetting Fraud as to Abrom, Count 4 – Civil Conspiracy as to Abrom

The claims stated in the Complaint regarding Abrom's possible involvement in the fraud is also sufficiently pled by Plaintiffs to deny Abrom's motion to dismiss. As previously noted, to maintain a claim for aiding and abetting fraud under DC law, Plaintiffs must allege "(1) that an offense was committed by someone; (2) that the accused participated in the commission; and (3) that he did so with guilty knowledge." *Williams,* 881 A.2d at 566. In addition, under DC law, "[t]he elements of civil conspiracy are: '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.' " *Executive Sandwich Shoppe,* 749 A.2d at 738. The elements of aiding and abetting have been sufficiently alleged because Plaintiffs claim that Abrom worked for Smith as a notary, was married to Smith who had ongoing communication with Kelly, and that she knew of at least one of the unrecorded deeds. They allege Abrom aided and abetted Smith and Kelly in

committing fraud by falsely notarizing the Bolling deed. Further, Plaintiffs believe that the notarization of the Bolling deed was fraudulent because Kelly was not in Washington, DC on the date she purportedly signed the deed.

Further, the elements of civil conspiracy have been sufficiently alleged. Plaintiffs claim that Abrom conspired with Kelly and Smith to defraud First Mount Vernon, and acted in concert with them by falsely notarizing the Bolling deed, which Smith allegedly signed in Kelly's name. For these reasons, the allegation of fraud is sufficiently particular. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (pleading aspects of fraud on information and belief must include information on which belief is based); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004) (same findings). The general rule that fraud allegations may not be made on information and belief is relaxed only for facts uniquely within the knowledge of the defendants. *See Rosengarten v. Buckley*, 565 F. Supp. 193, 196 (D. Md. 1982).The Court also believes that the knowledge of Kelly's whereabouts on a certain day, arguably can be found to be uniquely within the Defendants' knowledge, and that these allegations do fall within the exception.  In light of the Court's finding with respect to Smith, the Court finds that Plaintiffs claims against Abrom are sufficiently pled, given Abrom's personal and working relationship with Smith. Therefore, the claims against Abrom will not be dismissed for failure to satisfy the pleading requirements of Rule 9(b).

**B. Cross-Claim**

Smith has moved to dismiss Christian Title's Cross-Claim for indemnification or contribution. Christian Title points to Maryland law in its Cross-Claim while Smith points to District of Columbia law with respect to indemnification and contribution. Maryland adheres to the

traditional choice of law rule of *lex loci delicti* in deciding conflict of law questions. *Motor Club of America Ins. Co. v. Hanifi*, 145 F.3d 170, 177 (4th Cir. 1998). The traditional rule indicates that because all alleged transactions involving Smith Defendants arose in the District of Columbia, Maryland will apply the law of the place of the wrong where the alleged transactions took place. *See id.* Therefore, at this juncture, in light of the alleged facts, the Court will apply District of Columbia law to Christian Title's claim for indemnification and contribution. Under DC law, "[i]ndemnity is a shifting of responsibility from the shoulders of one person to another," which may arise "from an express contract provision or, in the absence of a contract, where indemnification is required to prevent injustice." *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000) (citing *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1116 (D.C. 1990)). "Where there is no express contract provision, an obligation to indemnify may be implied in fact on an implied contract theory or implied in law in order to achieve equitable results." *Quadrangle*, 748 A.2d at 435 (citing *Myco, Inc. v. Super Concrete Co., Inc.,* 565 A.2d 293, 297 (D.C. 1989)). In "implied in law," or "equitable" indemnity, a duty to indemnify may be "implied "out of a relationship between parties," to prevent a result "which is regarded as unjust or unsatisfactory." *Quadrangle*, 748 A.2d at 435. Further, when considering equitable indemnification, "[a] court's view of the equities may have been based on the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct." *Quadrangle*, 748 A.2d at 435. Contribution is also governed by equitable principles, "subject to any express or implied agreements between or among the parties sharing the liability." *Green Leaves Rest., Inc. v. 617 H Street Assocs.*, Nos. 04-CV-1359, 06-CV-1179, 06-CV-1193, 2009 WL 1789109, at *10 (D.C. June 25, 2009). The Cross-Claim on its face makes no factual allegations that were not contained in the Complaint, and particularly makes no reference to any contractual theory of indemnification nor any

other relationship between Smith and Christian Title that would justify equitable indemnification.

It is thus difficult to see what the basis of Christian Title's claim is. Christian Title does not allege, or alleges only in conclusory fashion, that it was without personal fault. In its Cross-Claim, Christian Title does not establish that there is a duty to indemnify out of a relationship between Christian Title and Smith to prevent an unjust or unsatisfactory result.

Christian Title merely alleges that it was not informed by Smith or Kelly of any other liens on the Georgia Avenue and 9th Street properties but does not demonstrate or set forth the requisite relationship that existed between the parties upon which Christian Title could rely without the need to confirm any information it received pertaining to the properties. Further, Christian Title provides no factual support as to why Christian Title's conduct is not as blameworthy as that of Smith. *See Quadrangle Dev. Corp.,* 748 A.2d at 435 (citing *R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin*, 596 A.2d 530, 546 (D.C. 1991)). Therefore, the Court finds that Christian Title's claims for contribution or indemnity are merely speculative at this time.[3] See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court will dismiss the Cross-Claim without prejudice, and permit Christian Title an opportunity to amend the Cross-Claim and allege sufficient facts to state a claim for relief and "nudge[] [its] claims across the line from conceivable to plausible." *Id.* at 570.

IV.    CONCLUSION

---

[3] At this time, the Court believes that DC law applies to Christian Title's Cross-Claim for indemnification and contribution. To the extent that Maryland law applies, an action for indemnity based on the active-passive distinction that Christian Title asserts in its claim is recognized by the Court. Generally, under Maryland law, the passively negligent tortfeasor has a right of implied indemnity against an actively negligent tortfeasor. Further, in order to maintain an action for contribution, the tortfeasor seeking indemnity must be liable to a plaintiff, in addition to the tortfeasor from whom indemnity is being sought. As it now stands, the Cross-Claim is insufficient and lacks factual support for indemnification and contribution under Maryland law.

For the foregoing reasons, the Court will deny Smith and Abrom's Motion to Dismiss, and grant without prejudice Smith's Motion to Dismiss Christian Title's Cross-Claim. A separate Order will follow.


_____July 31, 2009_____                                    _____/s/_____
Date                                                                    Alexander Williams, Jr.
                                                                            United States District Judge