IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> KEITH J. SMITH, *et al.*, <br><br> Defendants. | Action No. 08:08–CV–2085—AW |

## MEMORANDUM OPINION

Plaintiffs, First Mount Vernon Industrial Loan Association ("FMV") and Ticor Title Insurance Company ("Plaintiffs") bring this action against Defendants, Keith Smith, Christian Title & Escrow ("Christian Title"), and Latonya Abrom, claiming violations of Fraud, Constructive Fraud, Aiding and Abetting Fraud or Constructive Fraud, Civil Conspiracy, and Negligence. Pending before the Court is Keith Smith and Latonya Abrom's ("Smith Defendants") Motion for Summary Judgment. (Doc. No. 43). Defendant Latonya Abrom has requested partial summary judgment as to all claims against her. Christian Title has filed an Amended Cross-claim against Defendant Keith Smith. (Doc. No. 29). The Court has reviewed the record in this case and deems that no hearing is necessary.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

According to Plaintiffs, on November 17, 2006, Joy Kelly executed a Balloon Deed of Trust Note with First Mount Vernon in consideration for a loan in the amount of $557,500 from FMV to Joy Kelly. As security for the loan, Kelly gave First Mount Vernon a Commercial Deed of Trust on properties that Kelly owned. The properties at issue in this case are located at 4717

Georgia Avenue, N.W., Washington, DC 20011 ("the Georgia Ave. Property") and 3722 9th Street NW, Washington, DC 20011 (the "9th Street Property"), collectively, "the properties." Allegedly, Defendant Keith Smith was Kelly's attorney for the purpose of assisting Kelly with the process of obtaining loans on her properties and avoiding Kelly's lenders from instituting foreclosure on her properties.

Plaintiffs aver that before FMV extended a loan to Kelly, Plaintiffs hired Defendant Christian Title as a closing agent for the FMV loan. According to Plaintiffs, as the closing agent for this loan, Christian Title was charged with ensuring that there were no prior loans on Joy Kelly's properties. Christian Title purportedly contacted First Washington Insurance Company ("FWIC") to obtain release information concerning FWIC's deeds of trust on Kelly's properties. Plaintiffs contend that Defendant Smith knew of Christian Title's request for payoff information from FWIC. Aware of Christian Title's request, Smith alerted FWIC via fax that he would submit the information that Christian Title had requested from FWIC, thus assuming the role of submitting payoff information to Christian Title as opposed to having FWIC directly submit this information to Christian Title.[1] Smith later provided Christian Title with an FWIC release of a Deed of Trust dated March 16, 2006 for Kelly's Georgia Avenue Property. Additionally, Defendant purportedly provided Christian Title with a payoff statement for one unrecorded deed of trust on the 9th Street property held by FWIC in the amount of $250,000. According to Plaintiffs, Smith did not notify Christian Title or Plaintiffs about any remaining liens on the Georgia Avenue or the 9th Street Properties.

A bring-to-date title search which FMV and its settlement agent conducted on November 7, 2006, demonstrated that no other deeds of trust existed on the Kelly's Georgia Avenue or 9th

---

[1] According to Plaintiffs, Smith's facsimile to FWIC, dated November 16, 2006 states, "Please disregard the fax from Pat at Christian Title—I have all the release info for Pat in my file—I will take care of it." (Doc. No. 44, at 4).

Street Properties, and FMV was not aware of any other liens. On November 13, 2006, Kelly completed a loan application, in which she allegedly represented that the properties at issue in this case were not subject to any mortgages. Relying on Kelly's assertions, FMV believed that they would have first priority over the property in the event of foreclosure. Plaintiffs allege that in reality, Kelly's properties were subject to four undisclosed deeds of trust at the time that FMV closed on the loan.[2] Consequently, Plaintiffs indicate that $960,000 worth of liens on Kelly's property were not disclosed to FMV at the time they closed on the loan with Kelly.

Alleging further illegal conduct on behalf of Smith, Plaintiffs aver that on August 28, 2006, two weeks before Kelly executed a Deed of Trust in favor of FC Partners on her 9th Street Property, Smith faxed Lucy Edwards, an attorney for Kelly, a fax which reflected his fee for conducting a title search on for Ms. Kelly. According to Plaintiffs, Smith was involved in the process of helping Kelly obtain a loan from FC Partners, and he concealed his possession of a Deed of Trust in favor of FWIC in the process of attempting to obtain this FC Partners loan.

Plaintiffs state that at the time that Kelly closed on her loan with FMV, Smith, as Kelly's attorney, was aware of the prior deeds of trust on Kelly's property. Moreover, Plaintiffs allege that Smith assisted Kelly in concealing these prior deeds of trust from FMV. Plaintiffs believe that Latonya Abrom, Defendant Smith's wife and paralegal, knew of at least one of the prior deeds of trust and helped conceal this deed of trust from FMV. Furthermore, Plaintiffs assert that one of the undisclosed deeds of trust was a deed to FWIC on the Georgia Avenue Property which was executed on June 7, 2006. Plaintiffs aver that this deed was not recorded until

---

[2] Plaintiffs aver that the Kelly's properties were encumbered by the deeds of trust outlined in the chart below.

| Lender | Property | Amount | Executed | Recorded |
|---|---|---|---|---|
| FWIC | Georgia Ave. | $200,000 | Jun. 7, 2006 | Nov. 14, 2006 |
| FC Partners | 9th Street | $400,000 | Sept. 13, 2006 | Oct. 18, 2006 |
| FC Partners | Georgia Ave. | $230,000 | Sep. 22, 2006 | Oct. 18, 2006 |
| Anthony Bolling | Georgia Ave. | $130.000 | Nov. 16, 2006 | Nov. 16, 2006 |

3

November 14, 2006, which was only three days prior to the closing of the First Mount Vernon Loan. According to Plaintiffs, Kelly and Smith knew of this FWIC Deed of Trust on the Georgia Avenue property and engaged in fraud by failing to disclose this existing mortgage. As support for this allegation, Plaintiffs contend that Smith had this particular deed in his possession while Kelly was in the process of applying for other loans, thus acting fraudulently by failing to disclose this deed until November 14, 2006.

Furthermore, Plaintiffs allege that on November 16, 2006 (a day before the closing on the FMV loan), Smith signed Kelly's name to a deed of trust to Anthony Bolling. Plaintiffs allege that this deed was falsely notarized by Latonya Abrom, as Ms. Kelly did not actually sign this deed herself. The Bolling Deed of Trust was never disclosed to FMV.

On November 17, 2006, Kelly closed on the loan with FMV. Plaintiffs aver that Kelly made no payments on her loan to FMV after January 9, 2007, and FMV sent her a default notice on March 6, 2007 which demanded payment on the loan. On March 8, 2007, Smith allegedly called FMV to address the default notice that had been sent to Kelly, informing FMV that Kelly was planning to sell her property, which would allow her to pay off her loan by April of that year. According to Plaintiffs, Smith failed to inform FMV that there were multiple deeds of trust on the properties which had priority over FMV. Plaintiffs aver that Smith did not inform them that there were multiple deeds of trust that had priority over the FMV mortgage until March 22, 2007. Subsequently, in April 2007, FWIC sold the Georgia Avenue property in foreclosure, which extinguished FMV's fourth priority lien on the property. Later, FC Partners Deeds of Trust sold the 9th Street property in foreclosure, which extinguished First Mount Vernon's second priority lien on that property. Smith's failure to disclose these existing liens when assisting Kelly in applying for a loan from FMV gives rise to this suit.

First Mount Vernon filed suit against Joy Kelly in the United States District Court for the Eastern District of Virginia for breach of the note and for fraud. A bench trial was conducted on June 23, 2008 in the case against Kelly. The Court found Ms. Kelly liable for breach of the Note and for fraud. Plaintiffs bring the instant suit for fraud, aiding and abetting fraud, constructive fraud, and civil conspiracy against Smith. Plaintiffs bring claims of aiding and abetting fraud, constructive fraud, and civil conspiracy to commit fraud against Abrom. Defendant Christian Title brings a cross-claim for indemnification and contribution against Defendant Keith Smith for his alleged unlawful acts.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire*

*Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. ANALYSIS
### A. Fraud-Count I

Plaintiffs make several factual allegations to support the claim that both Smith and Abrom engaged in fraud while helping Ms. Kelly obtain a loan from FMV. As this Court determined in its Memorandum Opinion on Defendant's Motion to Dismiss, since all alleged transactions involving Defendants arose in the District of Columbia, the Court will apply District of Columbia law. *See* Doc. No. 27, at 8. Under District of Columbia law, to prove a claim for fraud, the Plaintiffs must show that the Defendant, (1) made a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *See Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). "Nondisclosure of material information may constitute fraud, especially where there is a duty to disclose." *Pyne v. Jamaica Nutrition Holdings, Ltd.*, 497 A.2d 118, 131 (D.C. 1985). The District of Columbia requires the plaintiffs to prove by clear and convincing evidence that the defendant acted fraudulently. *See id.*

As a preliminary matter, the Court will address claims filed against Defendant Abrom. Plaintiffs recognize Defendants' assertion that "there is but one specific allegation pertaining to Abrom . . . that 'Abrom falsely notarized it' [a deed of trust securing Bolling that was never funded or consummated, and thus never became a lien on any property.]" (Doc. Nos. 43-1, at 5; 43, at 24). Plaintiffs argue that Kelly signed an un-notarized power of attorney, which seemed to authorize Smith to sign a deed of trust in favor of Anthony Bolling on her behalf. (Doc. No. 43, at 10). Consequently, Plaintiffs aver that because the power of attorney allowing Smith to

sign the deed of trust on Kelly's behalf was un-notarized, it was invalid. *Id.* Thus, when Abrom signed the Bolling Deed of Trust, she was signing a false deed of trust.

Contrary to Plaintiffs' assertions, there is no evidence that when Abrom notarized the deed, she knew that she was making a false representation, with the intent to deceive the Plaintiffs. The evidence in the record clearly demonstrates that Abrom simply notarized the Bolling Deed of Trust. There is no suggestion from the record that Abrom knew that the power of attorney was invalid or that she falsely notarized the deed in order to record it in advance of the First Mount Vernon Loan. Imputing this knowledge requirement and intent to deceive requirement to Abrom would require the Court to make several inferences that the record simply does not allow. Viewing the facts in the light most favorable to the Plaintiffs, there is no genuine dispute of material fact that Abrom failed to engage in any illegal activity in this matter. As Abrom clearly lacked the requisite knowledge or intent to commit any illegal conduct, summary judgment shall be **GRANTED** to Defendant Abrom as to all counts against her.

The remaining discussion will address counts against Defendant Keith Smith. To demonstrate that he is entitled to summary judgment on the fraud claim, Defendant alleges that there is no evidence that Defendant Smith was directly involved in Joy Kelly's efforts to obtain any loans. (Doc. No. 43-1, at 6). However, Plaintiffs points to six primary incidents which manifest fraudulent conduct on behalf of Defendant Smith. According to Plaintiffs, Smith engaged in the following acts:

1) Retained possession of the FWIC deeds of trust on the 9th Street and Georgia Ave. Properties while assisting Kelly in seeking and obtaining other loans on the properties;

2) Assisted Kelly in entering into the FC Partners Deeds of Trust while the unrecorded FWIC Deeds of Trust was still in his possession;

7

3) Signed Kelly's name in the Bolling Deed of Trust and submitting it for recordation the day before the closing of the First Mount Vernon Loan;

4) Told FWIC not to send release information on the FWIC Deeds of Trust to Christian Title, and subsequently withheld information regarding the FWIC Deed of Trust on The Georgia Avenue property;

5) Engaged in other conduct to assist Kelly in encumbering properties with multiple loans without First Mount Vernon's knowledge; and

6) Sought a delay of First Mount Vernon's foreclosure on the properties in order to prevent First Mount Vernon from learning of the fraud.

First, Plaintiffs allege that Defendant Smith engaged in fraud by omission and affirmatively aided and abetted Kelly's misrepresentations by failing to record deeds of trust on the 9th Street and Georgia Avenue properties until three days before the FMV closing. Defendant denies any overt fraudulent conduct on his behalf and alleges that he only represented Ms. Kelly after the FMV closing, as Ms. Kelly supposedly had another attorney represent her while she attempted to obtain the FMV loan. Defendant states that before the FMV closing, Ms. Kelly "used [him] as a messenger, to locate and provide various documents when she was out of town." (Doc. No. 43-1 at 7). As Defendant Smith did not represent Ms. Kelly, he alleges that she prepared her loan applications herself, "and it was these applications that contained any false representations about her indebtedness." *Id.* Furthermore, Defendant contends that the Plaintiffs have not proved by clear and convincing evidence that Defendant Smith had any contact with Plaintiffs in this case until the FMV loan was already in default. *Id.* Smith contends that he only contacted Defendant Christian title to provide them with the specific payoff information that they had requested. *Id.* In fact, Defendant avers that Ms. Kelly testified during her trial that she had another attorney representing her for her closing on the FMV loan. *Id.* Because Ms. Kelly had her own attorney during the closing, Defendant avers that he had no duty to investigate

the full extent of Ms. Kelly's indebtedness and ensure that she had provided accurate information to other potential lenders.

Plaintiffs dispute Defendant's narration of the facts in this case. They aver that the Defendant Smith was Ms. Kelly's attorney, and he came into possession of the FWIC deeds of trust executed on Kelly's 9th Street and Georgia Avenue Properties in June of 2006. Doc. No. 44, at 17-18. According to Plaintiffs, these FWIC Deeds of Trust were executed on June 7, 2006. *Id.* at 18. To support the view that Defendant acted fraudulently, Plaintiffs aver that Defendant did not record the FWIC deed until November 14, 2006, which was only three days before the closing on the FMV loan. *Id.* In the Plaintiffs' view, Defendant purposefully waited to record the loans so that FMV would not be aware of existing encumbrances on Kelly's property at the time of closing. Accordingly, by waiting to record the deed, Kelly was able to hide the existing mortgages on her property, and was able to falsely assert to FMV that she had "no liens" on her property. *Id.*

Additionally, Plaintiffs point to a fax correspondence between Defendant Smith and Defendant Christian Title as evidence that Smith knew that Kelly was entering into the FMV loan while he was in possession of the FWIC Deed of Trust. *See supra* at 2, note 1. Without further factual development, it is unclear that the defendant learned of Kelly's attempts to obtain loans from FMV based on this single facsimile. Nonetheless, there is a genuine issue of material fact as to whether Defendant Smith had a duty to disclose Christian Title and/or FMV that he was holding an unrecorded deed of trust on Kelly's 9th Street and Georgia Avenue properties. Smith adamantly denies that any duty to disclose this deed of trust existing, arguing that his "role in the FMV transaction was to . . . limited to providing information upon request." (Doc. No. 43-1, at 4).

Although Defendant Smith may not have been Ms. Kelly's attorney for the purpose of securing a loan, he does acknowledge that he was performing a service for Ms. Kelly—namely, obtaining payoff information on her loans. As the Court noted above, a duty to speak can arise from a fiduciary relationship or from an instance where a material fact is not discoverable by a prudent person engaging in reasonable inspection. *See Ali v. Mid-Atlantic Settlement Servs.*, 640 F. Supp. 2d 1, 8-9 (D.D.C. 2009); *see also Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (internal citations omitted) ("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent . . . . Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship. . . . Outside of such a relationship, a duty to disclose may arise, among other circumstances, 'when one makes a partial disclosure and conveys a false impression.'").

From the facts of this case, there is a genuine issue of material fact as to the nature and extent of Mr. Smith's involvement in the loan obtainment process. Defendant asserts that he had no duty to either the Plaintiffs or Christian Title to fully disclose the existing mortgages on Ms. Kelly's property. Moreover, the defendant avers that he was not representing Ms. Kelly in the FMV loan obtainment process. The nature of Defendant's professional relationship to Ms. Kelly at the time he assisted in obtaining payoff information on Kelly's existing loans is unclear to the Court. A factual dispute exists as to whether Smith was Ms. Kelly's attorney who possessed a duty to disclose Kelly's existing mortgages to Plaintiffs and Christian Title. At this juncture, the Court is not willing to find that the defendant had no duty to fully disclose the existing mortgages on Ms. Kelly's property if he was in fact aware that these mortgages existed.

Mr. Smith's intent in failing to record the deeds is unknown to the Court at this time.

However, there is a genuine dispute of material fact about why the deed was not recorded until three days before the closing of the FMV loan with Kelly and when Smith actually received the FWIC deeds. Thus, there is a genuine issue of material fact as to whether the nondisclosure of this deed while Ms. Kelly was obtaining other loans constituted fraud by omission.

Furthermore, there is a genuine issue of material fact as to whether Smith fraudulently omitted the fact that he was holding an unrecorded deed on the 9th Street and Georgia Avenue properties when he allegedly assisted in obtaining the FC Partners loan. Plaintiffs recount the following facts to support this allegation:

> Smith's multiple communications with Lucy Edwards [Kelly's attorney] and FWIC in the days prior to the execution of the FC Partners Deeds of Trust, his possession of the FWIC Deeds of Trust at the time of the execution of the FC Partners Deeds of Trust, and his involvement in arranging the release of the March 16, 2006 deed of trust using funds from FC Partners loans, all support the inference that Smith was involved with the FC Partners loans, and that he retained possession of the FWIC Deeds of Trust while those loans took place in order to further Kelly's fraudulent plan to take out as many loans as possible on the Properties before entering into the First Mount Vernon Loan.

(Doc. No. 44, at 19).

At this stage in the litigation, it is unclear to the Court whether Defendant knew that Kelly was entering into the FC Partners Loan or that he actually assisted her in obtaining this loan. However, Plaintiffs' allegations create a genuine dispute of fact as to whether the defendant fraudulently failed to disclose prior deeds of trust on Kelly's property while he assisted in obtaining loans from FC Partners.

Plaintiffs also allege that Defendant Smith signed Kelly's name to a deed of trust to Anthony Bolling. Smith avers that *Kelly*, signed the Bolling Deed of Trust in his Washington, D.C. office on November 16, 2006. However, according to Plaintiffs, Kelly maintains that she never signed the Bolling Deed of trust before this deed was recorded, and in fact, she had no

11

knowledge of this deed. Doc. No. 44, at 7. Further bolstering the allegations that Kelly did not sign the Bolling Deed of Trust, Kelly alleged in deposition testimony that she was in Louisiana, and hence, could not have signed the Deed of Trust in Smith's officer as Smith alleges. However, Plaintiffs point out that Kelly did sign an un-notarized power of attorney that supports the inference that she intended for Smith to sign the Bolling Deed of Trust on her behalf.[3] Plaintiffs allege that Smith did in fact falsely sign the deed of trust on Kelly's behalf and then submitted it for recordation, placing yet another mortgage ahead of FMV's. (Doc. No. 44, at 20-21). Defendant responds to this allegation by stating that the Bolling Loan was never funded. (Doc. No. 43-1, at 9). The Court is unsure of the relevance that Defendant's response has to the allegation that Defendant misrepresented a material fact by falsely signing Kelly's name to the Bolling Deed of Trust. However, at this juncture, the Court believes that there is a genuine dispute of material fact about whether the Defendant falsely signed Ms. Kelly's name to the Bolling Deed of Trust.

Finally, Plaintiffs allege that that Defendant Smith called the Chief Operating Officer of First Mount Vernon on March 8, 2007, after FMV sent Kelly a default notice to request that FMV delay foreclosing on Kelly's home. Plaintiffs allege that Defendant Smith was attempting to delay the foreclosure on the properties to prevent FMV from learning that other mortgages

---

[3] In the bench trial held in the Eastern District of Virginia, the Court asserted in its findings of fact, "It should be noted that Ms. Kelly's signature on the deed of trust to Anthony Bolling, dated November 16, 2006, is in handwriting that appears to differ from her signature on other documents. It also appears based on the notarization of her power of attorney to Anthony L. Kelly that she was in New Orleans, Louisiana, on November 13, 2006, and that she conveyed that power of attorney because she did not intend to be in the Washington, DC area on November 17, 2006. An un-notarized power of attorney signed by Ms. Kelly on November 16, 2006, was also purportedly signed in New Orleans.
Ms. Kelly's attorney, Mr. Smith, claims that Ms. Kelly signed the deed of trust to Anthony Bolling in his office in Washington, DC, on November 16, 2006, and that it was notarized by Latonya Abrom, a woman who works in his office. It appears likely, however, that Ms. Kelly's signature on the deed of trust to Anthony Bolling was signed not by Ms. Kelly, but by or at the direction of Mr. Smith. Ms. Kelly appears to have signed a power of attorney to Mr. Smith on November 16, 2006, authorizing him to encumber the Georgia Ave. Property. Although the power of attorney was not notarized , and was therefore not effective under DC law, it supports an inference that Ms. Kelly intended for Mr. Smith to sign the deed of trust to Anthony Bolling, and that Mr. Smith effectuated her intent by signing her name to the deed of trust." FMV App. 399.

existed on the properties. There is a genuine dispute of material fact as to the purpose of this phone call, but the Plaintiffs' use of this situation as support for their fraud allegation is dubious, especially considering the fact that the Defendant allegedly represented Ms. Kelly at this point. Thus, a phone call to her mortgage company would not have been out of the ordinary. Nonetheless, this incident, coupled with the other acts alleged create a genuine factual dispute about whether Defendant Smith committed fraud. Therefore, the Court will **DENY** summary judgment to Defendant Smith as to Count I for Fraud.

### B. Constructive Fraud-Count II

Defendant seeks summary judgment on the constructive fraud claim brought against him. "Constructive fraud need not involve any intentional misrepresentation . . . ("neither actual dishonesty nor intent to deceive is the essential element; and negligence so gross as to deceive might be such fraud"). *De May v. Moore & Bruce, LLP*, 584 F.Supp.2d 170, 185 (D.D.C. 2008) (quoting *Rick v. United States,* 161 F.2d 897, 899 (D.C.1947)). Having found that the there is a genuine dispute of material fact on the issue of fraud, a genuine dispute of material fact certainly exists on the constructive fraud claim, based on the same reasoning the Court used to determine that a genuine dispute of material fact was presented for the fraud claim.[4] Therefore, the Court will **DENY** summary judgment as to Count II.

### C. Aiding and Abetting Fraud or Constructive Fraud—Count III

Defendant next moves for summary judgment on the count for Aiding and Abetting

---

[4] The Court notes that this count has been brought against both Smith and Abrom. The Court finds that Abrom's act of notarizing the Bolling Deed of Trust was not so negligent as to constitute constructive fraud. Although the power of attorney authorizing Smith to sign the Deed of Trust was un-notarized, this fact does not implicate Abrom for any wrongdoing. There indication from the facts that Abrom was involved in any misrepresentation of material fact, as the facts imply that Abrom was complying with her duties as a notary and was notarizing a deed which she presumed was being legally signed by her husband/colleague. Taking these facts under consideration, the Court maintains that all Abrom is entitled to summary judgment on all counts.

Fraud or Constructive Fraud. Defendant correctly notes that this cause of action has not been recognized in the District of Columbia. *See Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) (stating, "[t]he separate tort of aiding-abetting has not yet, to our knowledge, been recognized explicitly in the District, but the existence of the civil conspiracy action suggests a high probability that the legal rationale underlying aiding-abetting would also be accepted.") As the District of Columbia has not yet accepted this cause of action, the Court will **GRANT** Defendant's Motion as to this claim.

### D. Civil Conspiracy—Count IV

Finally, Defendant seeks summary judgment on the civil conspiracy count. The parties both accurately assert that conspiracy is not an independent cause of action, as liability for this cause of action depends upon the performance of some underlying tortuous act. *See McManus v. District of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007). As the Court finds that there is a genuine factual dispute about liability as to the underlying fraud and constructive fraud counts, the court will **DENY** the Defendant's Motion for Summary Judgment as to this count.

### E. Cross-Claim filed by Defendant Christian Title

Plaintiffs bring claims against Christian Title & Escrow as the closing agent for the FMV loans for negligence. According to Plaintiffs, "Christian Title was hired to perform as closing agent for the First Mount Vernon Loan. As closing agent, Christian Title was required to exercise reasonable care to ensure that there were no prior loans on the Properties." (Doc. No. 1, at 18). Additionally, Plaintiffs assert that "Christian Title was told by FWIC that it had loans on both the Georgia Ave., and 9th Street Properties. Smith provided a release of a FWIC deed of trust on the Georgia Ave. Property and a payoff statement for an unrecorded FWIC deed of Trust

14

on the 9th Street Property, but Christian Title failed to confirm with FWIC that the information provided satisfied all FWIC loans . . . . As a result of Christian's Title's failure to confirm the release information with the lender, Christian Title failed to discover the unrecorded FWIC deed of trust on the Georgia Ave Property, and failed to discover Kelly's fraudulent scheme." *Id.*

Defendant Christian Title has filed an Amended Cross-claim against Defendant Keith Smith for the same acts alleged in the Plaintiffs' original complaint filed against the Defendant. (Doc. No. 29).[5] Christian Title alleges that Smith owed Christian Title a duty as a third party not to make false statements of material fact and that Smith breached this duty "when Smith made false representations, which he knew to be false, and was for the purpose of defrauding Plaintiffs and Christian Title, when Smith misrepresented the status of both the 9th Street Property and the Georgian Avenue Property." *Id.* at 5. According to Christian Title, they reasonably relied on the information supplied by Defendant Smith to their detriment, as they conducted a title search on Kelly's properties, and they did not discover that the properties were encumbered by unrecorded deeds of trust, specifically, ones that Smith allegedly failed to disclose. Christian Title indicates that "but for the fraudulent acts of Defendant Smith, the true status of the loans against the Property would have been revealed." *Id.*

As a co-defendant with Defendant Smith, Christian Title seeks indemnification, contribution, and legal fees and costs if Christian Title is found to be liable for negligence. The Court in *Quadrangle Development Corp. v. Otis Elevator Corp.*, articulated the when the right to indemnification may arise stating,

> Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify has been recognized in cases where the equities have supported it. A court's view of the equities may have been based on the relation of the parties to one

---

[5] Namely, Christian Title alleges that "[a]lthough in direct communication with Christian Title regarding the status of the title to the Property, and having personal knowledge of the status of each and every loan against the Property, Smith failed to disclose this material information." (Doc. No. 29, at 4).

another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

748 A.2d 432, 435 (D.C., 2000).

Defendant Smith alleges that no right to indemnity or contribution exists because there is no claim by Christian Title of an express contractual duty to indemnify.[6] (Doc. No. 43, at 12). Moreover, Defendant Smith alleges that Christian Title cannot establish "evidence of any relationship between itself and Defendant that would entitle it to an implied right to indemnification." *Id.* The Court believes that while there may have been no express contractual duty for Defendant Smith to disclose the existing mortgages on Kelly's property to Christian Title, this fact does not negate the existence of the potential right to indemnification based on an implied contract theory or an implied in law theory to achieve equitable results. Contrary to Defendant Smith's assertions that there was no relationship between himself and Christian Title when Smith submitted the payoff information to Christian Title, as the Court has already discussed above, there is a genuine dispute of material fact as to whether Defendant Smith had a duty to disclose the existence of prior mortgages to Christian Title. Despite the fact that Kelly may have hired another attorney to represent her in the closing of the FMV loan, it appears to the Court that Defendant Smith had some involvement in the loan closing process. At this stage in the litigation, there is a genuine dispute of material fact as to whether his involvement triggered a duty to disclose this information to Christian Title. With the existence of this factual dispute about the Defendant's duty to Christian Title, at this juncture, the Court finds that there is a genuine dispute of fact as to whether a right to indemnification has arisen

---

[6] The Court notes, and Defendant Smith recognizes in its brief, that an express contractual duty is not required in order for the right to indemnification to arise. Defendant Smith correctly cites *Quadrangle Development Corp. v. Otis Elevator Corp.*, 748 A.2d at 435 for the proposition that "[a] duty to indemnify can arise out of an express contract provision, or it 'may be implied in fact on an implied contract theory or an implied in law in order to achieve equitable results.'" (Doc. No. 43-1, at 12)

based off of equitable principles.

If it later develops that Defendant Smith had a duty to disclose the existence of prior liens on Kelly's properties to Christian Title, a subsequent determination will have to be made as to whether this duty created an implied contract with Christian Title and whether equity would support Christian Title's right to contribution or indemnification from Defendant Smith. However, as already articulated, at this juncture, the nature of Smith's relationship with Kelly is in dispute. Moreover, the extent to which Smith was required to disclose information related to liens on Kelly's properties is also in dispute. With these factual disputes looming, the Court cannot grant summary judgment to Defendant Smith on Christian Title's cross-claim at this point. Therefore, the Court will **DENY** Defendant's Motion for Summary Judgment on Christian Title's Cross-Claim.

**IV. CONCLUSION**

An Order Consistent with this Memorandum Opinion will follow.

Date: <u>January 14, 2011</u>                                    /s/
                                                                  Alexander Williams, Jr.
                                                                  United States District Court